

10 Sentry Parkway
 Suite 200 P.O. Box 3001
Blue Bell, PA 19422-3001
Tel (610) 397-6500  Fax (610) 397-0450
www.foxrothschild.com

SCOTT BADAMI
Direct No:  610.397-6500
Email: SBadami@FoxRothschild.com


February 25, 2022

**VIA ECF**
The Hon. John M. Gallagher, U.S.D.J.
United States District Court for the Eastern District of Pennsylvania
Edward N. Cahn Courthouse & Federal Bldg.
504 W. Hamilton Street, Suite 4701
Allentown, PA 18101

Re:    **Doe 1, et al v. Boyertown Area School District, et al.**
       <u>**Docket No. 5:22-cv-00699**</u>

Dear Judge Gallagher:

As you are aware, this firm represents Defendants, the Boyertown Area School District ("District") and members of the District's Board of School Directors ("Board"), James H. Brophy, Brian J. Hemmingway, Ruth A. Dierolf, Lisa C. Hogan, Christine M. Neiman, Anthony D. Panarello, Marianne Scott, Roger A. Updegrove, and Jeffrey Zawada (together, "Defendants") in the above-referenced matter. Please accept this letter brief in response to Plaintiffs' Motion for a Temporary Restraining Order, filed on February 24, 2022, challenging an action by the Board on February 8, 2022, revising the District's Health and Safety Plan to recommend, but not require,

California      Colorado      Delaware      District of Columbia      Florida      Georgia      Illinois      Minnesota
Nevada      New Jersey      New York      North Carolina      Pennsylvania      South Carolina      Texas      Washington



February 25, 2022
Page 2

masks for District students and staff. (Exh. "A"). This revised plan including the "mask-optional"

policy was approved by the Board on February 8th and went into effect on February 14, 2022.

## I.  RELEVANT BACKGROUND

On February 8, 2022, the Board voted by a majority vote to amend the District's Health

and Safety Plan transitioning from a mandatory universal masking policy for District students and

staff to an optional one. This change followed a steady decline of COVID-19 cases in the

community as well as statements from a growing chorus of pediatricians, neuroscientists, special

education teacher and parents, expressing concern about the effects of prolonged masking on

children, particularly when compared to the benefits gained from prolonged masking.

Indeed, this very afternoon, less than 24 hours after the filing of this Motion for a

Temporary Restraining Order, the Centers for Disease Control and Prevention (CDC) released

updated guidance, dropping its recommendation for universal school masking. Instead, it now

recommends universal masking requirements only in communities at a "high level" of risk.[1] The

District, which encompasses areas of both Berks and Montgomery Counties, is not in a community

at a "high level" of risk. The CDC has designated Berks County as a community at a "low level"

of risk and Montgomery County as a community at a "moderate level of risk."[2] Accordingly, the

---

[1] "Use and Care of Masks," CDC Guidance, last updated Feb. 25, 2022, available at: https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html.

[2] "COVID-19 by County," CDC, last updated Feb. 25, 2022, available at: https://www.cdc.gov/coronavirus/2019-ncov/your-health/covid-by-county.html



February 25, 2022
Page 3

Board's decision which was reasonable at the time it was made, also now reflects current CDC recommendations for masking in schools. Plaintiffs' request that this Court issue a Temporary Restraining Order, enjoining the District from enforcing its mask-optional policy, was an extraordinary request, even before the CDC issued this guidance today. The fact that the CDC has now implicitly blessed the District's decision makes Plaintiffs' Motion for a Temporary Restraining Order even more remarkable. This far-reaching relief must be denied.

II.   <u>ARGUMENT</u>

    A.   <u>In the Interest of Judicial Efficiency and Economy, the Court Should Hold This Matter in Abeyance Pending Direction from the Third Circuit Court of Appeals.</u>

Initially, the Defendants respectfully request that this matter be held in abeyance because both Plaintiffs' Motion and the underlying civil action follow on the coattails of three very similar actions currently pending before the Third Circuit Court of Appeals, all of which also involve challenges to three Pennsylvania school districts' decisions to adopt a "mask optional policy." Two of those cases, *Doe v. North Allegheny School District*, W.D.Pa. Case No.: 2:22-cv-00055-MJH, *on appeal to* 3d Cir. Case No.: 22-1160, and *Doe v. Upper Saint Clair School District*, W.D.Pa. Case No.: 2:22-cv-0112-WS, *on appeal to* 3d Cir. Case No.: 22-1141, are set to be heard at oral argument on March 24. The third, *Doe v. Perkiomen Valley School District*, E.D.Pa. Case No.: 2:22-cv-00287-WB, *on appeal* to 3d Cir. (case number forthcoming) has not yet been briefed before the Third Circuit. In the interest of judicial efficiency and economy, this Court should decline to rule on Plaintiffs' Motion for a Temporary Restraining Order until the Third Circuit



February 25, 2022
Page 4

provides some direction that would likely be persuasive, if not binding, authority on this action.

To the extent this Court desires to review this matter in the interim, however, Defendants

respectfully request that Plaintiffs' Motion for a Temporary Restraining Order be denied as this

Court is without jurisdiction to hear their claims and even if it had jurisdiction, Plaintiffs are

unlikely to succeed on the merits of their case.

**B.** **The Court Should Deny Plaintiffs' Motion for a Temporary Restraining Order as Plaintiffs Cannot Meet the High Burden for This Extraordinary Remedy.**

A preliminary injunction or a temporary restraining order ("TRO") is an extraordinary

remedy granted only in limited circumstances. *Ferring Pharm., Inc. v. Watson Pharm., Inc*., 765

F.3d 205, 210 (3d Cir. 2014). Courts apply one standard when considering whether to issue interim

injunctive relief, regardless of whether a petitioner requests a TRO or preliminary injunction.

*Thakker v. Doll*, 451 F. Supp. 3d 358, 364 (M.D. Pa. 2020) *citing Ellakkany v. Common Pleas*

*Court of Montgomery Cnty.*, 658 Fed.Appx. 25, 27 (3d Cir. 2016). The main purpose of either

form of this preliminary injunctive relief "is *maintenance of the status quo* until a decision on the

merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994)

(emphasis added). "Status quo" refers to "the last, peaceable, noncontested status of the parties."

*Kos Pharms., Inc. v. Andrx Corp*., 369 F.3d 700, 708 (3d Cir. 2004) (internal citation and quotation

marks omitted). Here, the status quo is the District's mask-optional policy, which has been in

effect across the District since February 14, 2022. Thus, Plaintiffs are requesting this Court to

mandate injunctive relief that would *change* the status quo, requiring all District students and staff



February 25, 2022
Page 5

to suddenly resume masking, after two weeks of being able to choose whether or not to mask in District buildings. For this reason alone, the Court should deny Plaintiffs' Motion for a TRO.

Indeed, the extraordinary nature of preliminary injunctive relief, a motion for a TRO places precise burdens on the moving party. That burden is high. In deciding to issue TRO, "a district court must carefully weigh four factors: (1) whether the movant has shown a reasonable probability of success of the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994). The movant bears the burden of showing that the factors weigh in favor of granting the injunction. *Kos Pharms. Inc. v. Andrx Corp*., 369 F.3d 700, 708 (3d Cir.2004). "Only if the movant produces evidence sufficient to convince the [court] that all four factors favor preliminary relief should the injunction issue." *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). Further, the movant must demonstrate that the "preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). A TRO "should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). For that reason, "upon an application for a preliminary injunction [or TRO] to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937). As detailed below, there is much to doubt about



February 25, 2022
Page 6

Plaintiffs' claims here, so the Court should deny Plaintiffs' Motion for a TRO to force the District

to implement a universal masking policy.

1. **Plaintiffs Are Unlikely to Succeed on the Merits of Their Underlying Action Because They Lack Standing.**

A plaintiff bears the burden of demonstrating that Article III standing. *ZF Meritor, LLC v.*

*Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012). To satisfy this burden, a plaintiff must show: (1)

that he is under a threat of suffering an injury in fact that is concrete and particularized; the threat

must be actual and imminent, not conjectural or hypothetical; (2) a causal connection between the

injury and the conduct complained of; and (3) a likelihood that a favorable judicial decision will

prevent or redress the injury. *Id.* (*citing Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009))

(internal quotation marks omitted). "[E]ach element [of standing] must be supported in the same

way as any other matter on which the plaintiff bears the burden of proof, *i.e.* with the manner and

degree of evidence required at the successive stages of litigation." *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561 (1992). Plaintiffs do not have standing here because (1) the alleged harm is

speculative, (2) there is not a causal connection between the injury and the conduct complained

of, and (3) there is not a likelihood that a favorable judicial decision will prevent the alleged injury.

Plaintiffs contend that there are four layers of speculative harm subsumed in Plaintiffs'

argument. First, Plaintiffs assume that the Student-Plaintiffs will contract COVID-19 at school, as

opposed to elsewhere in the community, even though they allege a high rate of transmission of

COVID-19 in both Berks and Montgomery Counties. Second, allege that the Student-Plaintiffs



February 25, 2022
Page 7

will bring COVID-19 home to the allegedly medically-fragile Parent-Plaintiffs. Third, they speculate that a universal mask mandate in schools will prevent the Student-Plaintiffs from contracting COVID-19 in school. And fourth, they speculate that if the Student-Plaintiffs or the Parent-Plaintiffs were to contract COVID-19, that the infection would be so severe that they could be hospitalized or even die as a result of contracting the virus. (ECF No. 3-1 at pp. 5-7). As the court found in *Doe v. Upper Saint Clair Sch. Dist.*, No. 2:22-112, 2002 WL 189691 at *6-8 (Jan. 21, 2022), denying plaintiffs' request to enjoin enforcement of the district's mask-optional policy, an increased risk of harm does not constitute the injury-in-fact required to establish a case or controversy under Article III, nor is the alleged harm concrete and particularized, actual or imminent. The court in *Doe v. Upper Saint Clair* reasoned:

> At its core, the Complaint alleges that the School Board's Plan creates an increased risk of infection from Covid-19 (and attendant injury) which is beyond Plaintiffs' toleration and will cause them to keep their children from physically attending school. But Plaintiffs cannot plead or prove that absent universal masking they will contract COVID-19. Nor, conversely, can they plead or prove that even with universal masking they will not contract COVID-19. Both scenarios are entirely speculative. As such, Plaintiffs present what must be characterized as a claim relating to an increased risk of a hypothetical future injury that may never occur, or which may still occur even if the relief that they seek is granted.

*Id.* at *7.

Under the Third Circuit's holding in *Reilly v. Ceridian Corporation*, 664 F.3d 38, 41 (3d Cir. 2011), "allegations of hypothetical, future injury do not establish standing under Article III.



February 25, 2022
Page 8

Accordingly the court in *Upper Saint Clair*, properly determined that plaintiffs lacked standing, and this Court should follow suit.

Further, the Parent-Plaintiffs cannot establish standing on their own to sue under the Americans with Disabilities Act ("ADA") or Section 504 of the Rehabilitation Act of 1973 ("Section 504") due to the District's mask-optional policy for students and staff. Although Plaintiffs claim that this policy discriminates against the Plaintiffs, they are unlikely to present any evidence as to how this policy discriminates against the Parent-Plaintiffs, who are neither District students nor employees. Indeed, of the three identified Plaintiffs, only Jane Doe 3 is the parent of a child who is alleged to have a disability covered by the protections of the ADA and Section 504. For Plaintiffs Jane Doe 1 and John and Jane Doe 2, none of their respective children are alleged to have any disabilities covered by the protections of the ADA and Section 504. Rather, it is the *parents*, Jane Doe 1 and John and Jane Doe 2, who are alleged to have disabilities. But the District's mask-optional policy for students and staff cannot be found to have discriminated against these Parent-Plaintiffs by virtue of their children attending school, potentially contracting COVID-19 there, and then potentially bringing it home to their parents. To say that such a risk of harm is remote is an understatement.

Further, Jane Doe 1 and John and Jane Doe 2 do not have standing under either statute to bring their discrimination claims as a result of the District's mask-optional policy. The ADA and Section 504 both protect "qualified individual[s] with a disability." 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Under the ADA, "no qualified individual with a disability shall, by reason of such



disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, under Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The same substantive standards apply to claims under the ADA and Section 504 and therefore are addressed together. *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012); *Chambers v. Sch. Dist. of Philadelphia*, 587 F.3d 176, 189 (3d Cir. 2009). To establish a prima facie case of discrimination against the District under either the ADA or Section 504, a plaintiff must show the following: "(1) [Plaintiff] has a disability, or was regarded as having a disability; (2) [Plaintiff] was 'otherwise qualified' to participate in school activities; and (3) [Plaintiff] was 'denied the benefits of the program or was otherwise subject to discrimination because of [his/her] disability.'" *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014) (*quoting Chambers*, 587 F.3d at 189).

At this very basic level, Plaintiffs Jane Doe 1 and John and Jane Doe 2's claims fail because even though they might have a disability they are not "otherwise qualified" to participate in school activities; their children are. Nor have the Parent-Plaintiffs been denied the benefits of a school program because of their alleged disabilities. Indeed, the crux of their concerns focus on their children's ability to attend school in-person. They have made no allegations regarding their own access to the school building; the gravamen of their complaint and Motion for a TRO hinges on



February 25, 2022
Page 10

their children's access to an in-person educational program in the least restrictive environment. (ECF No. 3-1 at p. 6). Accordingly they do not have standing to bring suit under either the ADA or Section 504.

> **2. Plaintiffs Are Unlikely to Succeed on the Merits of Their Underlying Action Because They Have Failed to Exhaust Their Administrative Remedies.**

Even if this Court were to determine that Plaintiffs had standing, because they have failed to exhaust their administrative remedies, this Court is without jurisdiction to hear their claims under the ADA and Section 504. Generally speaking, the IDEA and its implementing regulations specifically require parties to exhaust all remedies at the administrative level before seeking relief in this Court. 20 U.S.C. § 1415(l); 34 C.F.R. § 300.516(e); *see Fry v. Napoleon Comty. Schs.*, 137 S. Ct. 743, 749-50, 754-55 (2017); *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272-73 (3d Cir. 2014); *S.D. v. Haddon Heights Bd. of Educ.*, 722 Fed. Appx. 119, 125 (3d Cir. 2018). This exhaustion requirement also applies to an action brought under Section 504 and the ADA that seeks relief that is also available under the IDEA. 20 U.S.C. § 1415(l). More specifically:

> Nothing in this title . . . shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, . . . *except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsection (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.*

20 U.S.C. § 1415(l) (emphasis added).



February 25, 2022
Page 11

Based on this language, courts have repeatedly held that to the extent that any claim seeks relief that is also available under the IDEA, the IDEA's administrative remedies must be exhausted before such an action is brought. *Batchelor*, 759 F.3d at 273-274; *R.R. v. Manheim Twp. Sch. Dist.*, 412 Fed. Appx. 544, 548 (3d Cir. 2011) (non-precedential opinion); *L.R. v. Manheim Twp. Sch. Dist.*, 540 F. Supp. 2d 603, 611 (E.D. Pa. 2008); *I.H. ex. rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 776 (M.D. Pa. 2012); *Swope v. Central York Sch. Dist.*, 796 F. Supp. 2d 592, 599-600 (M.D. Pa. 2011). Courts must look to the "gravamen of the plaintiff's complaint, setting aside any attempts at artful pleading." *Fry*, 137 S. Ct. at 747. A court's "examination of a plaintiff's complaint should consider substance, not surface: § 1415(l) requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.* Courts may evaluate the gravamen of a complaint by asking a pair of hypothetical questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school? Second, could an adult at the school have pressed essentially the same grievance?" *Id.* at 747.

Here, the answer to both questions is no. Plaintiffs' Complaint and Motion for a TRO focuses on the Student-Plaintiffs' access to an in-person education in the District in the least restrictive environment. (ECF No. 3-1 at pp. 6-7). This claim, although framed as a denial of access claim, is in reality about the students' educational program. They could not bring essentially the same claim in another public place such as a library or a concert hall, nor could an adult at the school bring essentially the same grievance because Plaintiffs' claims concern their children's



February 25, 2022
Page 12

education. Put differently, their claims fall squarely within the realm of the IDEA's administrative

process, a process that was designed to give school districts the opportunity to evaluate and

respond to parents' requests for accommodations. There indication that any of the Plaintiffs

pursued that process here before resorting to federal court.

### 3. Plaintiffs Are Unlikely to Succeed on the Merits of Their Underlying Action Because They Have Are Unlikely to Prevail on Their Claim of Discrimination Under the ADA and Section 504.

It is unclear from Plaintiffs' Complaint and Motion for a TRO the exact theory they are

pursuing under the ADA or Section 504. Exclusion or discrimination under the ADA or Section

504 may take the form of disparate treatment or failure to make a reasonable accommodation.

Some Circuits, though not the Third Circuit, have also permitted plaintiffs to bring a disparate

impact claim under the ADA or Section 504. Under any of theories, Plaintiffs are unlikely to

prevail. First, as stated previously, Jane Doe 1 and John and Jane Doe 2 will be unable to establish

a prima facie case of discrimination because they are not otherwise qualified to participate in

school activities, nor have they been denied the benefits of a District program because of their

alleged disabilities. In the same vein, Child Doe 1 and Child Doe 2 will be unable to establish a

prima facie case of discrimination because they are not alleged to have a disability.

Further, Plaintiffs have not alleged any evidence to prove disparate treatment, disparate

impact, or failure to make a reasonable accommodation by the District's implementation of the

mask-optional policy. To prove a disparate treatment claim, Plaintiffs must show an intent to



February 25, 2022
Page 13

discriminate, but Plaintiffs have not alleged any evidence of the District's intent to discriminate against the Plaintiffs here.

To establish a prima facie case of disparate impact discrimination—to the extent one is available under the ADA or Section 504—which Defendants dispute,  the plaintiff must show: (1) the occurrence of certainly outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially-neutral acts or practices. *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2015). The second factor ordinarily must be proven through statistical analysis. *Id.* ("'[P]laintiffs are ordinarily required to include statistical evidence to show disparity in outcome between groups.'" (*quoting Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574-75 (2d Cir. 2003) (emphasis omitted)). "This can be done by offering evidence showing that a neutral policy adversely affects a much greater percentage of people with a disability than it affects people without a disability." *Id.* Plaintiffs have not offered any such evidence. Moreover, Defendants dispute that a disparate impact theory of discrimination is available under the ADA or Section 504. *See*, *e.g.*, *Doe v. Bluecross Blueshield of Tennessee, Inc*., 926 F.3d 235, 241-42 (6th Cir. 2019).

Finally, to evidence a claim for failure to make a reasonable accommodation, Plaintiffs must first establish that they have requested an accommodation from the District. None of the Plaintiffs have alleged that here. Athough Plaintiffs argue that a universal masking policy is necessary for them to be reasonably accommodated under the ADA and Section 504, a school district "is not required to grant the specific accommodations required by Parents or otherwise



February 25, 2022
Page 14

make substantial modifications to the programs that were used for all other students" *Ridley School*

*Dist. v. M.R.*, 680 F.3d 260, 282. (3d Cir. 2012), particularly when other reasonable

accommodations are available. The law is clear that a public entity need only provide a reasonable

accommodation, not a plaintiff's preferred or requested accommodation. *See, e.g.*, *Berardelli v.*

*Allied Services Institute of Rehabilitation Medicine,* 900 F.3d 104, 125 (3d Cir. 2018); *Pahlavan*

*v. Drexel University College of Medicine*, 438 F. Supp. 3d 404, 421 (E.D. Pa. 2020). Plaintiffs

thus are unlikely to succeed in their claim that the District has failed to accommodate them in

violation of the ADA or Section 504.  Accordingly, Plaintiffs' discrimination claims are likely to

fail.

    **4.   Plaintiffs Are Unlikely to Demonstrate Irreparable Harm.**

    Plaintiffs claim that they are likely to suffer probable, irreparable harm if universal

masking is removed as shown by the fact that the rate of spread of infection of COVID-19 remains

in the "high" transmission category in Montgomery and Berks Counties. (ECF No. 3-1 at p. 21).

As discussed above, however, this alleged risk of harm is just that—a risk. Moreover, the CDC's

data from earlier today, showing Montgomery County at a "moderate" risk level and Berks County

at a "low" risk level, belies Plaintiffs' concern that Montgomery and Berks County are in "high"

transmission categories that pose a direct irreparable threat to the Plaintiffs. Further, the level of

transmission of COVID-19 in the District, even since it implemented its mask-optional policy two

weeks ago, shows minimal cases of COVID-19 among District students and staff. Indeed, over



February 25, 2022
Page 15

this past week ending today, the District reported only 12 COVID-19 cases, across the entire

District.[3]

### 5. The Balance of Equities Weighs in Favor of Defendants and Granting Plaintiffs' Motion is Not in the Public Interest.

As described above, it is unlikely that denying Plaintiffs' Motion for a Preliminary Injunction will result in irreparable harm to the Plaintiffs. On the other hand, granting their Motion will likely cause significant harm to District community. There is a real concern that granting Plaintiffs the relief they seek could open the door for similar actions in the future. Once the COVID-19 pandemic has ended, what would stop—these—or a different, but similarly-situated group of plaintiffs from asking the court to intervene to require universal masking every winter during cold and flu season and not just in schools but at libraries, in stores, and on modes of transportation? Indeed, the risks of influenza, particularly, are similar to those of COVID-19 for medically-fragile individuals. As noted by the court in *Upper Saint Clair*,

> [a]lthough immunocompromised children have always been present in our schools, and communicable diseases have always circulated, prior to COVID-19 there was never an argument for mandatory, indefinite, universal masking in schools—much less the argument that the failure of a school district to mandate universal masking constitutes a violation of federal law. Aside from cases addressing COVID-19, the Court was unable to locate a single case where a court held that a reasonable accommodation for an immunocompromised or otherwise vulnerable person was to require

---

[3] BASD COVID-19 Dashboard, available at https://www.boyertownasd.org/domain/1858 (last accessed Feb. 25, 2022).



February 25, 2022
Page 16

> all other students and staff of a school, or constituents of an
> institution or community, to wear a mask or any other type of
> personal protective equipment.

*Upper Saint Clair*, 2002 WL at *15.

Taken even further, the same logic Plaintiffs employ here could be used to compel other actions

or restrictions by third parties, ostensibly to prevent discrimination against disabled individuals.

For instance, many children in public schools have food allergies, but a court would never dream

of prohibiting other students from bringing those foods to school to accommodate the students

with food allergies. Surely, it is antithetical to the public interest to allow a single individual to

require other individuals to take affirmative actions affecting their own body, under the guise of

compliance with anti-discrimination statutes.

Moreover, granting Plaintiffs a preliminary injunction, enjoining the Board from

implementing its recommended-but-not-required masking policy will thrust this Court into the

improper role of a "super school board." It is well-established in Pennsylvania that courts are

"restrained, when dealing with matters of school policy, by the long-established and salutary rule

that courts should not function as super school boards." *Zebra v. School Dist. of the City of*

*Pittsburgh*, 449 Pa. 432, 437 (Pa. 1972). To that end, courts should "not interfere with the

discretionary exercise of a school board's power unless the action was based on 'a misconception

of law, ignorance through lack of inquiry into facts necessary to form an intelligent judgment or

the result of arbitrary will or caprice.'" *Id.* (*quoting Hibbs v. Arsenberg*, 276 Pa. 24, 26 (Pa. 1923)).

As the Board's decision to adopt a recommended-but-not-required masking policy was not based



February 25, 2022
Page 17

on a misconception of law, ignorance through a lack of inquiry into facts necessary to form an intelligent judgment and was not arbitrary or capricious, this Court should decline to intervene in their thoroughly-considered and well-reasoned decision. "'It is only when the board transcends the limits of its legal discretion that it is amenable to the injunctive process of a court of equity.'" *Zebra*, 449 Pa. at 750 (*quoting Landerman v. Churchill Area School Dist*., 414 Pa. 530, 534 (Pa. 1964). Just as the courts in *Upper Saint Clair* and *Delaware Valley* determined, this Court should decline to "overrule the vote" of the Board because "it is not for this Court to substitute its own judgment for that of the elected representatives of the School Board." *Upper Saint Clair*, 2002 WL at *16; *Delaware Valley*, 2021 WL 5239734 at *20 (citation omitted). Granting Plaintiffs a preliminary injunction would thus be contrary to the public interest and should therefore be denied.

## III. <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that Plaintiffs' Motion for a TRO be denied.

Respectfully submitted,

Scott Badami

Cc:   Ian Musselman, Esq. (via ECF)

131259203.1